UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PAMELA ANN BEARD,**

            **Plaintiff,**

v.                                             **Case No. 6:13-cv-965-Orl-22KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Pamela Ann Beard, seeking review of the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 12, 13, and the parties' joint memorandum, Doc. No. 19.[1]

**PROCEDURAL HISTORY.**

In 2010, Beard filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Program ("OASDI"), 42 U.S.C. § 401 *et seq*. Beard alleged that she became disabled on April 29, 2005. R. 115. Beard alleged that she was disabled due

---

[1] In the scheduling order, the Court required the parties to file a single, joint memorandum with an agreed statement of facts (with opportunities to assert objections to facts to which the parties could not agree). Doc. No. 18.

to a back injury with pain, side effects of medication, depression and anxiety. *See, e.g.*, R. 144, 163, 169.

After her application was denied initially and on reconsideration, Beard sought review of the decision by an Administrative Law Judge ("ALJ"). R. 69. The ALJ held a hearing on February 6, 2012. Beard (accompanied by an attorney) and a vocational expert ("VE") testified. R. 27-42.

After consideration of the hearing testimony and other evidence in the record, the ALJ determined that Beard was insured under OASDI through December 31, 2006. R. 16. The ALJ concluded that Beard had anxiety and low back pain, which were severe impairments but which did not meet or equal a listed impairment. R. 16-17. The ALJ found that Beard would have mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence or pace with no episodes of decompensation of extended duration. R. 17.

The ALJ concluded that Beard had the residual functional capacity ("RFC") to perform light duty work limited to the performance of simple, one to two step tasks. R. 18. The ALJ determined that Beard could not perform any of her past relevant work. R. 19. After consideration of the testimony of the VE, the ALJ found that Beard could perform light, unskilled work such as ticket taker, counter attendant, and assembler of small parts. R. 19-20. Therefore, the ALJ concluded that Beard was not disabled. R. 20.

Beard sought review of the ALJ's decision by the Appeals Council. R. 8. On May 22, 2013, the Appeals Council considered additional evidence submitted by Beard and found that it did not provide a basis for changing the ALJ's decision. R. 1-3.

Beard seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Plaintiff having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the parties' stipulated statement of facts adequately states the pertinent facts in the record. Doc. No. 19 at 3-8. Accordingly, I will only summarize the record evidence to protect Beard's privacy to the extent possible.

Beard was born in 1961. R. 115. She completed school at least through the 11th grade, and she could read, speak and understand English. R. 31, 143, 145. She had previously worked as an office clerk and secretary. R. 39-40, 145.

Beard testified that she stopped working in 2001. R. 32. In 2004, she and her husband were planning to open a business selling bicycles in Key West, Florida. R. 33-34. Beard testified that this business never opened, but treatment records from April 2005 reflect that the Beards had made an attempt to open the business, which caused Beard extreme stress. R. 34, 280. The business moved back toward the Melbourne, Florida area in November 2005. R. 274. In March 2006, Beard reported that she and her husband had

great difficulties getting the business started. R. 273. No earnings were reported for Beard after 2001. R. 134.

In about 2004, Beard developed pain in her hip. R. 32-33. She testified that an MRI showed a herniated disc at L5-S1. R. 33. She also suffered from anxiety and depression beginning in about 2000. Id.

Beard testified that many of her medical records were destroyed during hurricanes in Florida in 2004. R. 36. She tried to obtain records from Aijaz A. Syed, M.D., one of her treating physicians. In a letter first submitted to the Appeals Council, Dr. Syed wrote that he closed his practice on November 22, 2004, and that all of his medical records were transferred to Farhat J. Khawaja. M.D. R. 662. In another letter first submitted to the Appeals Council, an office manager for Dr. Khawaja wrote that Dr. Syed's records were destroyed during the hurricanes in 2004. R. 663.

Records from Zafar Sharar, M.D., an internal medicine physician in Dr. Khawaja's practice group, show that Beard sought treatment in April 2005 for anxiety and headaches. R. 280. Dr. Sharar observed that Beard sat comfortably in a chair and was in no acute distress. R. 281. In August 2005, she sought follow-up treatment for anxiety, which Dr. Sharar described as "very stable," and shoulder and arm pain. R. 278. Upon examination, Dr. Sharar observed that Beard had full range of motion in all joints. She did not complain of hip or back pain. Id.

In November 2005, Beard complained of low back pain without radiation for which she had previously been treated with Relafen. Dr. Sharar also prescribed Relafen. R. 274. In March 2006, Beard reported a "long standing history of back pain after a motor vehicle

4

accident." At that time, she had back pain off and on. R. 273. Dr. Sharar referred Beard to Dr. Kallich, a pain management specialist. *Id.* There are no treatment notes from Dr. Kallich in the record.

In August 2006, Beard sought treatment from Jayadevan Kundumadathil, M.D. She complained of an anxiety disorder and a history of back pain treated with Relafen. Upon examination, Dr. Kundumadathil observed full range of motion in all joints with no palpable joint tenderness and normal muscle strength and tone. R. 351. Dr. Kundumadathil found that Beard's back pain was stable and continued Beard on Relafen. *Id.* During follow-up visits later in 2006, Beard indicated that she was feeling well and neurological examinations were unremarkable. R. 349-50.

In October 2007, Beard sought treatment for lower back and hip pain radiating down her left leg with tingling and numbness. She had suffered the problem for "1 year +" with symptoms increasing in the last month. R. 287. An MRI dated October 16, 2007, revealed a moderate central herniated nucleus pulposus at L5-S1. R. 284. Another MRI of the lumbar spine taken in October 2008 showed effacement of the exiting L5 nerve roots. R. 293. Medical records reflect a diagnosis of lumbago. R. 324. In 2009, Brian Dowdell, M.D., treated Beard for radiating low-back pain that also caused hip pain. *See, e.g.*, R. 369.

On February 16, 2011, Olga M. Garcia, M.D., prepared a physical RFC assessment after review of Beard's records. Dr. Garcia opined that, as of the date last insured, Beard could lift up to 50 pounds occasionally and 25 pounds frequently. She could sit, stand or walk about 6 hours each in an 8-hour workday. R. 493-500. Dr. Garcia summarized the

5

medical records supporting her findings as follows: "There is no evidence of lumbar pain, or any other physical complaint. At this point, the [claimant's] symptoms for the period of 04/29/05 to 12/31/2006 appear to be mostly [within normal limits] with no major limitations noted." R. 494. The ALJ did not give this opinion significant weight. R. 17.

At the ALJ's hearing, Beard testified that, as of the date last insured, she was essentially bedridden. R. 34. She could not stand, bend, stoop or drive a motor vehicle. R. 38-39. Medication caused her to be dizzy. R. 37-38. She could shower and dress herself with difficulty. R. 34. She had surgery on her back in 2009. R. 36, 189, 525-26. Thereafter, she walked with a limp. Initially, she used a back brace and later a cane. R. 37.

The ALJ asked the VE to assume an individual of Beard's age, education and work experience who could perform light duty work limited to the performance of simple one and two-step tasks. The VE testified that this person could perform light, unskilled work as a ticket taker, counter attendant and assembler of small parts, each of which jobs was available in the national economy. R. 40. If the hypothetical individual could not sustain concentration and attention in order to carry out simple one and two-step tasks, the VE testified that there would be no work the person could perform. *Id.*

## ANALYSIS.

Beard raises three objections to the Commissioner's final decision. She contends that the ALJ did not articulate specific reasons supported by substantial evidence in the record to support the determination that limitations from back pain were not as severe as Beard reported them to be. She submits that the Appeals Council also erred by not finding

that evidence showing that she had attempted to obtain records from Dr. Syed, who treated her before the disability onset date, and that those records were destroyed was new, material evidence that, if considered by the ALJ, presents a reasonable possibility that the ALJ's decision about the functional limitations arising from pain would have been different. Finally, she contends that the ALJ erred by failing to call a medical expert to testify about her disability onset date.   These are the only issues I will address.

*Application of the Pain Standard.*

The ALJ correctly articulated the pain standard applicable in this circuit.   *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   She found that Beard had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."   Doc. No. 19 at 9.

Beard contends that the ALJ's reasons for rejecting her testimony about the functional limitations arising from pain are not supported by evidence in the record.   In her decision, the ALJ expressly evaluated only Beard's complaints about "excruciating hip pain." R. 18.   The ALJ cited essentially three reasons for her decision: (1) Beard "admitted that she could take care of her [activities of daily living] before the [date last insured]"; (2) there were no records of treatment for complaints of hip pain; and, (3) Beard made no attempt to present letters or any other type of evidence to support her allegations that treatment records for hip pain were destroyed.   R. 18-19.

7

Beard's arguments in this regard are well taken.  First, Beard testified that she could care for her personal hygiene before the date last insured only with difficulty.

Second, Beard did not complain solely of "excruciating hip pain."  While Beard testified that she was no longer able to work in 2005 because she developed pain in her hip, she continued her testimony by indicating that an MRI showed a herniated disk at L5-S1. R. 32-33.  A herniated disk at L5-S1 can cause hip pain.  *See Herniated disk*, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/000442.htm (last visited June 11, 2014) ("With a slipped disk in your lower back, you may have sharp pain in one part of the leg, hip or buttocks and numbness in other parts.").  Later MRIs confirmed Beard's testimony that she had a herniated disk at L5-S1.  Additionally, treatment records by Dr. Dowdell focused on Beard's back problems as the source of her hip pain.  *See, e.g.*, R. 369.  Because the ALJ found Beard's low-back pain to be a severe impairment, she was required to evaluate the limitations arising from low-back pain, not just from hip pain.

Third, records presented for the first time to the Appeals Council confirm Beard's testimony that she could not produce treatment records from Dr. Syed because they had been destroyed.[2]

---

[2] The Eleventh Circuit has held, albeit in an unpublished decision, that nothing requires the Appeals Council to further explain its denial of review beyond a statement that it considered the additional evidence and found that it did not provide a basis for changing the ALJ's decision.  *See Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 832-33 (11th Cir. 2013) (citing *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007)).  This analysis appears correct in light of the requirement in *Ingram* that this Court consider the evidence as a whole, including evidence first submitted to the Appeals Council, to determine whether the final decision of the Commissioner is supported by substantial evidence and correct application of the law.  *Ingram*, 496 F.3d at 1262. The reason the Appeals Council found the evidence insufficient to warrant changing an ALJ's decision would not materially assist this Court in its analysis of the record as a whole.

Therefore, none of the reasons articulated by the ALJ support her finding that Beard's complaints of limitations due to back pain were not credible.[3]

"The court 'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  Doc. No. 19 at 2 (quoting *Dyer*, 395 F.3d at 1210).  Accordingly, reversal of the final decision is required here so that the Commissioner can properly evaluate Beard's functional limitations during the insured period arising from low-back pain.

*Medical Expert.*

Beard contends that the ALJ erred by failing to call a medical expert to render an opinion about Beard's disability onset date due to the limited medical evidence available before the date Beard was last insured, citing Social Security Ruling 83-20.  Ruling 83-20 advises an ALJ to call on the services of a medical advisor when it may be possible, based on the medical evidence in the record, to "reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination . . . ."  Doc. No. 19 at 24 (citing SSR 83-20, 1983 WL 31249, at *3 (Jan. 1, 1983)).

The Commissioner correctly argues that when, as here, there was no finding of disability, this portion of Ruling 83-20 does not apply.  *See Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (unpublished decision cited as persuasive authority).  Ruling 83-20 does suggest other information that an ALJ should consider when

---

[3] The ALJ also cited conflicting statements in the record regarding whether Beard and her husband operated a bicycle-sales business as a basis for finding that Beard's testimony was not entirely credible.  R. 18.  Substantial evidence in the record supports this finding.  This finding is not a basis to excuse the ALJ's failure to evaluate the functional limitations arising from Beard's back pain.

9

medical records are lacking, including lay evidence of the claimant's condition during the insured period.  SSR 83-20 at *3.  On remand it would be prudent for Beard to supplement the record with additional information about the limitations arising from her impairments before the date she was last insured under OASDI.

### RECOMMENDATION.

For the reasons set forth above, I respectfully recommend that the Court **REVERSE** the final decision of the Commissioner pursuant to sentence four of § 405(g) and **REMAND** the case for further proceedings.  I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its order on this Report and Recommendation and, thereafter, close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** this 11th day of June, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

10